UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

INDIAN HARBOR INSURANCE COMPANY  :
as Subrogee of MILE SQUARE LOFTS,:
CURANDERISMO, INC. AS TRUSTEE,   :
            Plaintiff,           :
                                 :
        v.                       :    CA 08-146 ML
                                 :
ASSURANCE COMPANY OF AMERICA,    :
            Defendant.           :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court are cross motions for summary judgment
filed by Defendant Assurance Company of Amer ica ("Assurance" or
"Defendant") and Plaintiff Indian Harbor Insurance Company as
Subrogee of Mile Square Lofts, Curanderismo, Inc. as Trustee
("Indian Harbor" or "Plaintiff").  See Defendant Assurance
Company of America's Motion for Summary Judgment (Document
("Doc.") #20) ("Defendant's Motion for Summary Judgment" or
"Defendant's Motion"); Plaintiff's Motion for Summary Judgment
(Doc. #23) ("Plaintiff's Motion for Summary Judgment" or
"Plaintiff's Motion") (collectively the "Motions" or "Motions for
Summary Judgment").  The Motions have been referred to me for
preliminary review, findings, and recommended disposition
pursuant to 28 U.S.C. § 636(b)(1)(B).  A hearing was held on
March 29, 2010.  After reviewing the filings, listening to oral
argument, and performing independent research, I recommend that

Defendant's Motion for Summary Judgment be granted and that
Plaintiff's Motion for Summary Judgment be denied.

## I.   Plaintiff's Allegations

This is an subrogation action brought by Indian Harbor, as
subrogee of its insured, Mile Square Lofts, Curanderismo, Inc. as
Trustee, against Assurance.  Plaintiff alleges that Assurance has
breached its contract of insurance with Mile Square Lofts (Count
I), which resulted in Indian Harbor paying more than its share of
a loss which occurred at Mile Square Lofts on March 16, 2006 (the
"Loss").  See Complaint (Doc. #1-2) ¶¶ 16-17.  Indian Harbor
seeks reimbursement from Assurance for amounts Indian Harbor paid
to Mile Square Lofts as a result of the Loss which exceeded its
proportionate share of its obligations to Mile Square Lofts.  See
id. at 3.  Indian Harbor also seeks equitable contribution (Count
II) and indemnification (Count III) from Assurance for the
amounts it paid to Mile Square Lofts as a result of the Loss.
See id. at 3-4.  Indian Harbor additionally requests a
declaratory judgment (Count IV) from this Court that Assurance is
liable for its share of insurance payments made to Mile Square
Lofts as a result of the Loss.  See id. at 4-5.

## II.  Travel

Plaintiff filed the instant Complaint on or about March 11,
2008, in the Superior Court for Providence County, Rhode Island.
See Complaint at 1, 5.  Defendant removed the matter to this

Court on April 29, 2008.  See Notice of Removal (Doc. #1);

Docket.  On May 14, 2008, Defendant filed its answer to the

Complaint.  See Defendant's Answer ("Answer") (Doc. #6); Docket.

The parties on January 28, 2010, filed their respective Motions

for Summary Judgment.  See Docket.  The Court conducted a hearing

on March 29, 2010.  See id.  Thereafter, the Motions were taken

under advisement.

**III. Law**

    **A.   Summary Judgment Standard**

    "Summary judgment is appropriate if 'the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law.'"  Commercial Union

Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed.

R. Civ. P. 56(c)); accord Kearney v. Town of Wareham, 316 F.3d

18, 21 (1st Cir. 2002).  "A dispute is genuine if the evidence

about the fact is such that a reasonable jury could resolve the

point in the favor of the non-moving party.  A fact is material

if it carries with it the potential to affect the outcome of the

suit under the applicable law."  Santiago-Ramos v. Centennial

P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting

Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

    In ruling on a motion for summary judgment, the court must

examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party."  Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)).  "[T]he standards are the same where, as here, both parties have moved for summary judgment."  Pacific Ins. Co. v. Eaton Vance Mgmt., 369 F.3d 584, 588 (1st Cir. 2004)(quoting Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002)(citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720, at 335-36 (3d ed. 1998)("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.")));  see also Specialty Nat'l Ins. Co. v. OneBeacon Ins. Co., 486 F.3d 727, 732 (1st Cir. 2007)("The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review.")(quoting Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006)).

The non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial.  See Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53 (citing Anderson v. Liberty Lobby,

4

Inc., 477 U.S. 242, 256, 106 S.Ct. 2505 (1986)). "[T]o defeat a
properly supported motion for summary judgment, the nonmoving
party must establish a trial-worthy issue by presenting enough
competent evidence to enable a finding favorable to the nonmoving
party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94
(1st Cir. 2002)(quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d
836, 842 (1st Cir. 1993))(alteration in original)(internal
quotation marks omitted).

"[W]hen the facts support plausible but conflicting
inferences on a pivotal issue in the case, the judge may not
choose between those inferences at the summary judgment stage."
Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995).
Furthermore, "[s]ummary judgment is not appropriate merely
because the facts offered by the moving party seem more
plausible, or because the opponent is unlikely to prevail at
trial. If the evidence presented is subject to conflicting
interpretations, or reasonable men might differ as to its
significance, summary judgment is improper." Gannon v.
Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991)
(citation and internal quotation marks omitted).

**B.   Construction of Insurance Policies**

The construction of an insurance policy is a legal issue for
the court. Evergreen Nat'l Indem. Co. v. Tan It All, Inc., 111
S.W.3d 669, 675 (Tex. App. 2003). This Court has observed that:

Rhode Island courts interpret insurance policy terms according to the same rules of construction governing contracts. The courts look at the four corners of a policy, viewing it in its entirety, affording its terms their plain, ordinary[,] and usual meaning. The test to be applied is not what the insurer intended by his words, but what the ordinary reader and purchaser would have understood them to mean. **When the terms of an insurance policy are found to be clear and unambiguous, judicial construction is at an end, and the contract terms must be applied as written.** Whether coverage exists in any given case for a damage-causing event depends first and foremost upon the precise terms and conditions of the policy in question.

<u>Armbrust Int'l, Ltd. v. Travelers Cas. & Sur. Co. of Am.</u>, No. C.A. 04-212 ML, 2006 WL 1207659, at *5 (D.R.I. May 1, 2006)(bold added)(internal quotation marks and citations omitted); <u>see also</u> <u>LaPlante v. York Ins. Co. of Maine</u>, C.A. No. 07-62, 2008 WL 239611, at *4 (D.R.I. Jan. 28, 2008)("Rhode Island courts interpret insurance policy provisions according to the same rules for interpretation of other contracts. Rhode Island courts have no need to construe contractual provisions unless those terms are ambiguous. When the terms of an insurance policy are clear, a Rhode Island court gives the language its plain, ordinary and usual meaning.")(internal quotation marks and citations omitted); <u>Town of Cumberland v. R.I. Interlocal Risk Mgmt. Trust, Inc.</u>, 860 A.2d 1210, 1215 (R.I. 2004)("We will not deviate from the literal policy language unless we deem the policy to be ambiguous."); <u>Aetna Cas. & Sur. Co. v. Sullivan</u>, 633 A.2d 684, 686 (R.I. 1993) ("[I]n the event the policy is determined to be clear and unambiguous, judicial construction is eclipsed and the contract

6

must be applied as written."); <u>Brown v. Travelers Ins. Co.</u>, 610 A.2d 127, 128 (R.I. 1992)("[A]n insurance policy is to be treated as a contract between the insured and the insurer.  This contract should be enforced according to its clear and unambiguous terms.")(internal citation omitted).  Ambiguity in a contract cannot be resolved on summary judgment.  <u>Garden City Treatment Ctr., Inc. v. Coordinated Health Partners, Inc.</u>, 852 A.2d 535, 541 (2004).  However, according to the Rhode Island Supreme Court:

> Because ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate *** the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, *not in a hypertechnical fashion, but in an ordinary, common sense manner*.  A court should not, however, stretch its imagination in order to read ambiguity into a [contract] where none is present.

<u>Id.</u> at 542 (alterations in original)(internal citation and quotation marks omitted); <u>see also</u> <u>Mallane v. Holyoke Mut. Ins. Co. in Salem</u>, 658 A.2d 18, 20 (R.I. 1995)(noting that in interpreting insurance contracts courts "refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present").

**IV.  Discussion**

    **A.  Defendant's Motion for Summary Judgment**

    Defendant argues that summary judgment should be granted "in favor of Assurance in that: (1) by its very terms, the Assurance

insurance policy at issue was not in effect on the date of loss;
and (2) to the extent that any coverage is afforded under the
Assurance insurance policy, it is in excess to all others." 
Defendant Assurance Company of America's Memorandum of Law in
Support of Motion for Summary Judgment ("Defendant's S.J. Mem.")
at 1.  Because the Court finds that the Assurance policy was not
in effect on March 16, 2006, the date of the Loss, it is
unnecessary for the Court to reach Defendant's second argument.

### 1.    Facts in Light Most Favorable to Plaintiff[1]

---

[1] Plaintiff failed to file a Statement of Disputed Facts as
required by District of Rhode Island Local Rule ("DRI LR") Cv
56(a)(3).  See DRI LR Cv 56(a)(3) ("An objecting party that is
contesting the movant's Statement of Undisputed Facts shall file a
Statement of Disputed Facts, which shall be numbered correspondingly
to the Statement of Undisputed Facts, and which shall identify the
evidence establishing the dispute, in accordance with the requirements
of paragraph (a)(2).");  see also Armbrust Int'l, Ltd. v. Travelers
Cas. & Sur. Co. of Am., No. C.A. 04-212 ML, 2006 WL 1207659, at *1
(D.R.I. May 1, 2006)("The nonmoving party must submit a responsive
statement identifying the facts 'as to which he contends there is a
genuine issue necessary to be litigated.'")(quoting prior version of
local rule).  Therefore, the facts as stated in Defendant's Rule 12.1
Statement of Undisputed Facts ("Defendant's SUF") are taken as true.
See DRI LR Cv 56(a)(3) ("For purposes of summary judgment, any fact
alleged in the movant's Statement of Undisputed Facts shall be deemed
admitted unless expressly denied or otherwise controverted by a party
objecting to the motion.");  see also Ayala-Gerena v. Bristol Myers-
Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996)(noting that "Appellants'
failure to provide a separate statement of disputed facts resulted in
the district court's taking of Appellees' statement of uncontested
facts as admitted");  Horn v. S. Union Co., C.A. No. 04-434S, 2008 WL
2466696, at *2 (D.R.I. June 18, 2008)("Any fact alleged in the
movant's Statement of Undisputed Facts is deemed admitted unless
expressly denied or otherwise controverted by a party objecting to the
Motion.")(citing DRI LR Cv 56(a)(3));  Anabell's Ice Cream Corp. v.
Town of Glocester, 925 F.Supp. 920, 924 (D.R.I. 1996)(noting that
nonmoving party had failed to "serve and file, together with the
opposing memorandum of law ... a concise statement of all material
facts as to which he contends there is a genuine issue necessary to be
litigated" and that, as a result, "the movant's version of the facts
may be, and is in this case, taken as true")(citing predecessor of DRI

Curanderismo, Inc. ("Curanderismo"), at all times material
to this action was engaged in the renovation of a building
located in Central Falls, Rhode Island, known as Mile Square
Lofts, which was being converted from a mill building to a
"green" building with commercial and residential condominium
units.  See Plaintiff's Statement of Undisputed Facts (Doc. #27)
("Plaintiff's Opp. SUF") ¶ 15 (citing Memorandum in Support of
Plaintiff's Opposition to Defendant's Motion for Summary Judgment
("Plaintiff's Opp. Mem."), Exhibit ("Ex.") A (Affidavit of
Benjamin J. Burbank[,] Vice President of Curanderismo, Inc.
("Burbank Aff.")) ¶ 3).  At the inception of the mill renovation
project, Curanderismo contacted Flagship Insurance, Inc.
("Flagship"), an independent insurance agency located in New
Bedford, Massachusetts, to procure insurance for the project.
Id. ¶ 17 (citing Burbank Aff. ¶ 6).

Subsequently, Assurance issued a Builder's Risk Policy,
identified as policy number BR 47466553, to Curanderismo with
effective dates of July 29, 2003, to July 29, 2004.  See
Defendant's Rule 12.1 Statement of Undisputed Facts (Doc. #22)
("Defendant's SUF") ¶ 3 (citing Defendant's S.J. Mem., Ex. 3
(Affidavit of Kathryn S. Roberts ("Roberts Aff.")) ¶ 4).  The
Builder's Risk Policy was renewed for a one-year term, having
effective dates of July 29, 2004, to July 29, 2005.  Id. ¶ 4

---

LR Cv 56(a)(3))(alteration in original).

(citing Roberts Aff. ¶ 6).  At all times material hereto, the Assurance Builder's Risk Policy identified as BR 47466553 insured property identified as 404 Roosevelt Avenue, Central Falls, Rhode Island.  Id. ¶ 5 (citing Roberts Aff. ¶ 5).

Thereafter, Assurance issued a Builder's Risk Policy, identified as policy number BR 62036217, to Curanderismo, with effective dates of July 28, 2005, to July 28, 2006.  Id. ¶ 6 (citing Roberts Aff. ¶ 7).  At all times material hereto, the Assurance Builder's Risk Policy identified as BR 62036217 insured property identified as 9 Clay Street, Central Falls, Rhode Island.  Id. ¶ 7 (citing Roberts Aff. ¶ 7).

Indian Harbor issued a Commercial Property Policy of Insurance, identified as policy number FCI 002 8194, to Mile Square Lofts, Curanderismo, Inc. as Trustee, having effective dates of July 29, 2005, to July 29, 2006.  Id. ¶ 1 (citing Complaint ¶¶ 6-7).  At all times material hereto, the Indian Harbor policy identified as FCI 002 8194 insured property located at 404 Roosevelt Avenue and 9 Clay Street, Central Falls, Rhode Island.  Id. ¶ 2 (citing Complaint ¶¶ 6-7).

On or about March 16, 2006, the Loss occurred at the property identified as 404 Roosevelt Avenue, when a portion of a retaining wall collapsed during excavation of a trench in preparation for the installation of a handicap ramp.  Id. ¶ 8 (citing Complaint ¶ 9).  Mile Square Lofts, Curanderismo, Inc. as

Trustee, reported the March 16, 2006, Loss to Indian Harbor, which investigated the Loss and made payments to its insured as a result of said Loss.  Id. ¶ 9 (citing Complaint ¶¶ 10-11; Answer ¶ 10).  Indian Harbor, by virtue of the payments made to Mile Square Lofts, Curanderismo, Inc. as Trustee, is subrogated to the extent of its payments to Mile Square Lofts, Curanderismo, Inc. as Trustee.  Id. ¶ 10 (citing Complaint ¶ 13).

Subsequent to the Loss and after having placed Indian Harbor on notice of this Loss, Curanderismo reported the Loss to Assurance.  Id. ¶ 11 (citing Roberts Aff. ¶ 8).  Upon investigation, Assurance denied coverage under the Assurance Builder's Risk Policy identified as BR 62036217.  See id. ¶ 12 (citing Complaint ¶ 12; Answer ¶ 12; Roberts Aff. ¶ 12); see also id. ¶ 7.

### 2.  Analysis

Assurance argues that summary judgment should enter in its favor because "[t]he Assurance Policy explicitly provides that coverage is terminated 'when permanent property insurance applies.'  The undisputed facts establish that 404 Roosevelt Avenue was insured under a policy of permanent property insurance prior to the Loss — thus terminating the Assurance policy prior to the Loss, to the extent that the Assurance Policy covered property at 404 Roosevelt Avenue."  Defendant's S.J. Mem. at 4. Plaintiff "maintains that coverage for this loss [was] provided

by the policies of insurance issued by both parties," Memorandum
in Support of Plaintiff's Opposition to Defendant's Motion for
Summary Judgment ("Plaintiff's Opp. Mem.") at 2, and that,
therefore, Assurance is responsible for its share of the amounts
Indian Harbor paid to the insured, see id.

Assurance argues that "pursuant to the plain and unambiguous
terms of the Assurance Policy, its coverage, if any, terminated
prior to the Loss that occurred on March 16, 2006." Defendant's
S.J. Mem. at 7. The Assurance Builder's Risk Policy identified
as BR 62036217 contains the following provision:

> 3.   WHEN COVERAGE BEGINS AND ENDS
>
>> We will cover risk of *loss* from the time when you
>> are legally responsible for the Covered Property on
>> or after the effective date of this policy if all
>> other conditions are met. Coverage will end at the
>> earliest of the following:
>
>> ....
>
>> f.   **When permanent property insurance applies** ....

Defendant's S.J. Mem., Ex. 2 at 28-29 (bold added); Defendant's
S.J. Mem., Ex. 6 (97 A.L.R. 3d 1270 § 2) at 9 ("When termination
of coverage shall occur is frequently spelled out in a builder's
risk policy, and the only question for determination is whether
the occurrences there referred to have transpired ...."). The
fact that Indian Harbor had issued a Commercial Property Policy
of Insurance, FCI 002 8194, with effective dates of July 29,
2005, to July 29, 2006, to Mile Square Lofts, Curanderismo, Inc.

as Trustee, is not in dispute.  <u>See</u> Defendant's SUF ¶ 1

("Plaintiff, Indian Harbor Insurance Company, issued a Commercial

Property Policy of insurance to Mile Square Lofts, Curanderismo,

Inc. as Trustee, identified as policy number FCI 002 8194 and

having effective dates of July 29, 2005[,] to July 29, 2006

....");  Complaint ¶ 7 ("At all times relevant hereto, there was

in effect a Commercial Property Policy issued by Indian Harbor to

Mile Square Lofts under Policy No. FCI 002 8194, in effect from

July 29, 2005[,] to July 29, 2006[,] and insuring the Subject

Property.").  Accordingly, Assurance argues that, based on the

provision that its builder's risk policy ended "[w]hen permanent

property insurance applie[d] ...," Defendant's S.J. Mem., Ex. 2

at 28, "[b]y virtue of the Assurance Policy's express terms and

conditions, the Assurance Policy terminated on July 29, 2005-that

is, the date the Indian Harbor Policy went into effect, and

therefore, there was no coverage under the Assurance Policy

applicable to th[e] Loss," Defendant's S.J. Mem. at 7.

Indian Harbor asserts that "neither the Indian Harbor Policy

nor the Assurance policies define 'permanent property insurance'

and this term remains ambiguous."  Plaintiff's Opp. Mem. at 6;

<u>see also</u> <u>Zanfagna v. Providence Washington Ins. Co.</u>, 415 A.2d

1049, 1050 (R.I. 1980)(noting plaintiffs' argument that exclusion

in insurance policy was "reasonably susceptible of two different

meanings, and in such event the exclusion should be construed

13

against the insurer."). Indian Harbor also states, however, that
"[i]t is undisputed that the Indian Harbor policy provide[d]
commercial property coverage and the Assurance policy provide[d]
builder's risk coverage." Plaintiff's Opp. Mem. at 9; <u>see also</u>
Complaint ¶¶ 7, 8. Thus, the question is whether a "Commercial
Property Policy," Complaint ¶ 7, is the equivalent of "permanent
property insurance," Defendant's S.J. Mem., Ex. 2 at 28.
Assurance contends that it is. <u>See</u> Defendant's S.J. Mem. at 10
("The Indian Harbor Policy was, by its own classification, a
permanent policy of property insurance ...."). The Court agrees.

The ACORD Commercial Insurance Application dated June 21,
2005, describes 404 Roosevelt Avenue as a "6 Family Apartment
Building Completely Renovated in 2005," Defendant's S.J. Mem.,
Ex. 5 at 1, which was "[c]oming off Builder's Risk[,]" <u>id.</u> The
coverage was to be "commercial general liability[.]" <u>Id.</u> at 5
(capitalization omitted). Significantly, Anthony Rourke, the
insurance adjustor who investigated the claim for Indian Harbor,
responded affirmatively at his deposition when asked whether the
Indian Harbor policy was a permanent property policy.
Defendant's S.J. Mem., Ex. 10 (Deposition of Anthony Rourke
("Rourke Dep.")) at 56. The complete exchange follows:

> Q.   ... The loss occurred on the 404 Roosevelt side, if
>       you will, right?
>
> A.   Yes.
>
> Q.   And I think you stated earlier that the Indian

14

Harbor policy shows an address of 404 Roosevelt?

A.    Yes.

Q.    And the Indian Harbor policy is a permanent
      property policy?

A.    Yes.

Q.    Right?

A.    Yes.

Id. at 56-57.[2]

The Court finds that the phrase "permanent property insurance" in Assurance Builder's Risk Policy number BR 62036217 is not ambiguous.  See Garden City Treatment Ctr., Inc. v. Coordinated Health Partners, Inc., 852 A.2d at 541-42 ("[A] contract is ambiguous only when it is reasonably and clearly susceptible of more than one interpretation."); see also Evergreen Nat'l Indem. Co. v. Tan It All, Inc., 111 S.W.2d at 676 ("If a policy can be given only one reasonable meaning, it is not ambiguous and will be enforced as written."); id. ("Not every difference in contract interpretation amounts to an ambiguity.").

---

[2] In addition, Brian Breton, vice president of Flagship Insurance Company ("Flagship"), see Memorandum of Law in Support of Defendant's Objection to Plaintiff's Motion for Summary Judgment ("Defendant's Opp. Mem."), Exhibit ("Ex.") 1 (Affidavit of Brian Breton ("Breton Aff.")) ¶ 1, stated that Damon Carter, president of Curanderismo, see id. ¶ 5, in 2005 "suggested that 404 Roosevelt Avenue was ready to come off the builder's risk insurance policy and be insured by a permanent policy of insurance," id. ¶ 14; see also id. ¶ 17 ("[T]he property located at 404 Roosevelt Avenue was insured under a permanent policy of property insurance by and through Indian Harbor Insurance Company."); id. ¶ 30 ("The policy issued by Indian Harbor relative to 404 Roosevelt Avenue and identified as policy number FCI 002 8194 was a permanent policy of property insurance.").

The Court further finds that the Assurance policy identified as BR 62036217 terminated as to 404 Roosevelt Avenue, the undisputed location of the Loss, when the Indian Harbor permanent property insurance policy FCI 002 8194 took effect on July 29, 2005, prior to the date of the Loss.  See Port of Olympia v. Lexington Ins. Co., 73 Fed. Appx. 949, 950 (9th Cir. 2003)("Construing the contract as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance, we conclude that the policy clearly and unambiguously limits fire coverage to those properties the Port submitted to Lexington in the Schedule of Premises.")(internal citation and quotation marks omitted); Armbrust Int'l, Ltd. v. Travelers Cas. & Sur. Co. of Am., 2006 WL 1207659, at *9 (noting that coverage at issue was "limited by the policy language" to losses which took place during policy period and were discovered within 120 days of end of policy period).

In 528 Madison Street Condominium Association v. Assurance Co. of America, NO. L-964-08 (N.J. Super. Ct. Law Div. Apr. 3, 2009)(transcript of motion hearing and decision), the court was asked to construe an identical provision stating that builder's risk insurance terminated "[w]hen permanent insurance applies[,]" id. at 9.  There, as here, the plaintiff argued that "[t]hat clause, 'permanent property insurance,' is not defined ...," id. at 22; see also id. at 10-11.  The court rejected the plaintiff's

16

argument and granted summary judgment in the defendant's favor, stating that: "I think the policy term is clear.  On its face, the intent of the policy was clear.  This builder's risk policy was to dovetail with permanent insurance, which is a common aim of builder's risk insurance ...." Id. at 37-38.  The court concluded that the builder's risk "policy terminated as soon as the permanent policy went into effect." Id. at 38.

This Court's construction of an unambiguous insurance policy is consistent with the purpose for which the insurance was purchased.  See Rydman v. Martinolich Shipbldg. Corp., 534 P.2d 62, 153 (Wash. Ct. App. 1975)("This construction of an unambiguous insuring agreement is totally consistent with the purpose for which the insurance was purchased.").  Indian Harbor contends that Assurance's argument that "its policy of insurance terminated at the inception of the Indian Harbor policy ... requires a finding that the Assurance policy was in effect for one calendar day, as the effective dates of the Assurance Policy were July 28, 20[0]5[,] to July 28[,] 2006[,] and the effective dates of the Indian Harbor policy were July 29, 2005[,] to July 29[,] 2006." Plaintiff's Opp. Mem. at 5.  Indian Harbor's argument overlooks the different purposes of the respective insurance policies.

The deposition testimony illuminates the distinction between the two types of coverage.  For example, at his deposition Bruce

Kestenbaum of Flagship discussed the difference between the
builder's risk and commercial property policies:

> A.   [T]he first thing I thought about [in determining
>      the best way to provide an insurance quote for the
>      insured] was a builder's risk policy for the
>      building that would be under renovation.
>
> Q.   Why was that the first thing you thought of?
>
> A.   Because there is a building that is going to be
>      renovated.  It's going to be a vacant building
>      while it's being renovated.  That is the definition
>      of an inland marina, builder's risk to cover it.
>      That way you cannot cover it on a property policy,
>      because it's vacant and the renovations that are
>      going on.  Therefore, the builder's risk form is
>      what we use on this.

Defendant's Mem., Ex. 11 (Deposition of Bruce Kestenbaum
("Kestenbaum Dep.")) at 32-33; see also Zanfagna v. Providence
Washington Ins. Co., 415 A.2d at 1051 (noting that "consideration
must be given to the purpose of the builders' risk insurance,"
which was "to protect the builder against loss to material that
has not as yet been built into the structure"); id. at 1050
("Builders' risk insurance protects a property owner or a
contractor against loss that may occur during the construction,
alteration, or repair of a building.").  Mr. Kestenbaum testified
that subsequently "the building would be completed, and that a
different policy was needed," Kestenbaum Dep. at 51; see also id.
("at that point in time a new application was issued to me, or a
request for a quote to change it from a builder's risk policy or
to get a quote for a regular commercial package policy, as it

18

being an occupied building"), because "if the building is going to be completed, it no longer qualifies for a builder's risk.  At that point in time it has to go on to a commercial property policy," id. at 52; see also 528 Madison St. Condo. Ass'n v. Assurance Co. of Am., No. L-964-08 at 15-16 (discussing differences between builder's risk insurance policy and condominium insurance policy).  Asked whether the possibility that 404 Roosevelt Avenue would be continued on builder's risk was discussed, Mr. Kestenbaum replied, "No, because we were told that the building was completed, or was going to be completed by the renewal date."  Kestenbaum Dep. at 63; see also 528 Madison St. Condo. Ass'n v. Assurance Co. of Am., No. L-964-08 at 29 (noting that builder's risk and permanent policies were designed to dovetail, not overlap, and that "[a]s soon as permanent insurance goes into place, builder's risk is over").  Thomas Lemire, the underwriting manager for WKF&C of New England, an outsourced underwriting agency for Indian Harbor, see Defendant's S.J. Mem., Ex. 8 (Deposition of Thomas Lemire ("Lemire Dep.")) at 10-11, testified at his deposition that:

> A general property policy is, it starts out where you already have the building completed and standing.  So you are charging on the full, completed structure from beginning to end.  You don't have the construction hazards, if you will, during the process of being built where it collapses or falls, or something may happen.  So there is a difference there.

Id. at 39; see also 528 Madison St. Condo. Ass'n v. Assurance Co.

of Am., No. L-964-08 at 23 (noting that condominium policy was "a different type of policy providing different coverages"); Lemire Dep. at 44 ("It is a different risk."). Mr. Lemire's testimony continued:

> Q.   At the time this policy [FCI 002 8194] was issued, did you have an understanding that the building was complete or at its full value, I think you used that phrase?
>
> A.   I had an understanding that the building was complete.

Id. at 39.

Indian Harbor further asserts that Curanderismo did not intend to insure the "subject premises," Plaintiff's Opp. SUF ¶ 15, through two separate insurance policies and two different insurers, see id. ¶¶ 22-24 (citing Burbank Aff. ¶¶ 11-13); see also Plaintiff's Opp. Mem. at 3 ("the parties' mutual insured, Mile Square Lofts, intended to purchase a single policy of insurance that would provide coverage for a single building ...")(footnote omitted).[3]  In Indian Harbor's view, "[t]o credit

---

[3] Indian Harbor relies on the Burbank Aff. to support this argument. See Plaintiff's S.J. SUF ¶¶ 9-11 (citing Burbank Aff.). Assurance counters Plaintiff's argument with the Affidavit of Brian Breton ("Breton Aff.") of Flagship, which details his dealings with Curanderismo's president, Damon Carter. See Breton Aff. ¶¶ 5-7, 10, 13-17, 20, 22, 24-29, 32-33. Significantly, Mr. Breton states that neither he "nor Flagship ever had any communications with Benjamin J. Burbank, Vice President of Curanderismo, Inc., relative to the purchase of insurance for Curanderismo, Inc." Id. ¶ 31; cf. Am. & Foreign Ins. Co. v. Allied Plumbing & Heating Co., 194 N.W.2d 158, (Mich. Ct. App. 1971)(noting that person who handled negotiations regarding insurance policies testified that builder's risk and permanent policies were not to overlap).  Mr. Breton, who was involved in the negotiations with Curanderismo, Inc., regarding its insurance

[Assurance's] argument would unjustly enrich Assurance, which

collected a premium and failed to provide coverage to its

insured, and result in great inequity to the insured."

Plaintiff's Opp. Mem. at 5-6. However, as noted above, "[t]he

test to be applied is not what the insurer intended by his words,

but what the ordinary reader and purchaser would have understood

policies, avers that "Mr. Carter represented himself as having
authority to purchase insurance on behalf of Curanderismo, Inc.,"
Breton Aff. ¶ 22; that Mr. Carter "authorized Flagship to accept both
the Assurance builder's risk policy and the Indian Harbor property
policy," id. ¶ 27; that "Mr. Carter never challenged or questioned the
fact that two separate policies (one builder's risk relative to 9 Clay
Street, and one permanent property insurance policy relative to 404
Roosevelt Avenue) were being issued and, in fact, approved the
purchase of two separate policies," id. ¶ 28; that "[t]he policy
issued by Indian Harbor relative to 404 Roosevelt Avenue and
identified as policy number FCI 002 8194 was a permanent policy of
property insurance," id. ¶ 30; and that "[a]t all times prior to March
16, 2006, neither Damon Carter nor any agent, servant or
representative of Curanderismo, Inc.[,] ever questioned why two
separate policies of insurance were issued with respect to the
property located at 9 Clay Street and 404 Roosevelt Avenue," id. ¶ 32.
Mr. Breton's affidavit is supported by an email he sent to Mr. Carter
on July 8, 2005, which summarized the proposed builder's risk
insurance policy for 9 Clay Street and the property and liability
insurance policy for 404 Roosevelt Avenue. See Breton Aff.,
Attachment ("Att.") 4 (Email from Breton to Carter of 7/8/05), and by
the ACORD Commercial Insurance Application dated June 21, 2005, for
404 Roosevelt Avenue which describes a "6 Family Apartment Building
Completely Renovated in 2005. Coming off Builder['']s Risk," id., Att.
2 at 5. Thus, the Court agrees with Assurance that Mr. Burbank's
"thoughts and beliefs, as well as his perceptions of what
Curanderismo, Inc., intended or believed with respect to the purchase
of insurance for its building(s) ... are not relevant and do not
present a disputed issue of material fact that should operate to
preclude summary judgment in favor of Assurance, nor do they operate
to support the entry of summary judgment in favor of Indian Harbor."
Defendant's Opp. Mem. at 4; cf. Gorman v. Gorman, 883 A.2d 732, 738
n.7 (R.I. 2005)("The Family Court appears to have given some weight to
the testimony of the parties about what they intended Paragraph 11.1
of the Agreement to mean. In view of our holding about the
unambiguous nature of that paragraph, however, we give no weight
whatsoever to that testimony.").

them to mean.  When the terms of an insurance policy are found to
be clear and unambiguous, judicial construction is at an end, and
the contract terms must be applied as written." <u>Armbrust Int'l,.
Ltd. v. Travelers Cas. & Sur. Co. of Am.</u>, 2006 WL 1207659, at *5
(internal citation omitted); <u>see also</u> <u>Evergreen Nat'l Indem. Co.
v. Tan It All, Inc.</u>, 111 S.W.3d at 678 ("We may not engage in
policy construction to contrive an ambiguity when the meaning of
the policy language is plain and certain."); <u>Malo v. Aetna Cas. &
Sur. Co.</u>, 459 A.2d 954, 956 (R.I. 1983)("When the terms are found
to be clear and unambiguous, the task of judicial construction is
at an end.  The contract terms must then be applied as written
and the parties are bound by them."); <u>Rydman v. Martinolich
Shipbldg. Corp.</u>, 534 P.2d at 63 ("Where the language of a
contract is unambiguous, the intent of the parties and meaning of
the contract are to be determined from the language alone,
without resort to other aids of construction.").  Thus, whatever
Curanderismo's subjective intent or understanding, the
unambiguous language of the Assurance Builder's Risk Policy
controls.  See <u>Carterosa, Ltd. v. Gen. Star Indem. Co.</u>, 489
S.E.2d 83, 85, 88 (Ga. Ct. App. 1997)(rejecting plaintiff's
argument that he intended building to fall within insurance
policy's coverage when diagram indicated that it was not
covered); <u>see also</u> <u>Rydman v. Martinolich Shipbuilding Corp.</u>, 534
P.2d at 64 ("It could not be stated more clearly that the

builder's risk insurers' liability terminated outside the time and location limitations.").

While Indian Harbor characterizes the "[s]ubject [p]roperty," Complaint ¶ 6, as encompassing both 9 Clay Street and 404 Roosevelt Avenue, see id.; see also Plaintiff's Opp. Mem. at 11 ("The subject premises at 404 Roosevelt Avenue and [9] Clay Street, Central Falls, Rhode Island[,] was considered for the purposes of recorded documents, taxation[,] and in the understanding of its owner, Curanderismo, Inc.[,] to be one building."), Assurance argues that:

> In this instance, according to the declarations page, the Assurance Policy insured property located at 9 Clay Street, Central Falls, Rhode Island. While the insured's mailing address is noted as 404 Roosevelt Avenue and while Assurance previously specifically insured the property located at 404 Roosevelt Avenue under a separate Builder's Risk policy (Assurance Policy number BR 47466553), the 2005 Assurance Builder's Risk Policy was issued as a new policy, for a separate address noted as 9 Clay Street, for a project that had reportedly not yet started.

Defendant's S.J. Mem. at 9 (internal citations omitted); see also id., Ex. 2 (Declarations Page) at 2; id., Ex. 7 (Underwriting Summary for Assurance Builder's Risk Policy number BR 62036217) at 1; id., Ex. 15 (Request for Commercial Quote) at 1.  However, this dispute is immaterial to the Court's determination of the instant Motions.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986)("Only disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment.  Factual
disputes that are irrelevant or unnecessary will not be
counted.").  Even accepting as true Indian Harbor's subjective
belief that it was insuring one structure which encompassed both
404 Roosevelt Avenue and 9 Clay Street, see Lemire Dep. at 44;
Burbank Aff. ¶¶ 10, 14, looking at the four corners of the policy
and giving its terms their plain, ordinary, and usual meaning,
see Armbrust Int'l, Ltd. v. Travelers Cas. & Sur. Co. of Am.,
2006 WL 1207659, at *5, and construing the documents "in an
ordinary, common sense manner," Garden City Treatment Ctr., Inc.
v. Coordinated Health Partners, Inc., 852 A.2d at 542 (italics
omitted), the Court finds that the Assurance Builder's Risk
Rolicy number BR 62036217 terminated when the Indian Harbor
insurance policy took effect.  See Defendant's S.J. Mem. at 10
("[E]ven assuming, arguendo, that the Assurance Policy [BR
62036217] afforded coverage to the 404 Roosevelt Avenue property,
the Assurance Policy terminated on July 29, 2005–the date the
Indian Harbor Policy went into effect — and therefore, did not
provide coverage for the subject Loss, which occurred on March
16, 2006.")(internal citation omitted); see also id. at 17
("[W]hether the Assurance Policy covered only 9 Clay Street or
both 9 Clay Street and 404 Roosevelt Avenue, the Indian Harbor
Policy—a permanent property insurance policy—was in effect at the
time of the Loss, thereby extinguishing any coverage that may

24

have applied to the same property under the Assurance Builder's Risk Policy, based upon the clear, unequivocal[,] and unambiguous terms of the Assurance Policy which provided that coverage ends when permanent property insurance applies.")(citing <u>Am. & Foreign Ins. Co. v. Allied Plumbing & Heating Co.</u>, 194 N.W.2d 158, 161-63 (Mich. Ct. App. 1971)).  Therefore, whatever Curanderismo's intent, BR 62036217 did not provide coverage for the Loss which occurred on March 16, 2006, at 404 Roosevelt Avenue.

Based on the Court's finding that the Assurance Builder's Risk Policy BR 62036217 did not provide coverage for the Loss, Defendant's Motion for Summary Judgment should be granted.  I so recommend.

### B.   Plaintiff's Motion for Summary Judgment

Indian Harbor maintains that both parties' policies of insurance provide coverage for the Loss.  <u>See</u> Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's S.J. Mem.") at 1-2.  Indian Harbor has paid its insured for the total amount of the claim resulting from the Loss and contends that Assurance is responsible for its share of the amount paid. <u>See</u> <u>id.</u> at 2.

### 1.   Facts in Light Most Favorable to Defendant

Curanderismo, at all times relevant to the instant action, was engaged in the renovation of a property known as Mile Square

Lofts,[4] located in Central Falls, Rhode Island, which was being converted from a mill building to a "green building" with commercial and residential condominium units.  See Plaintiff's LR CV 56 and Rule 12.1 Statement of Undisputed Facts in Support of Its Motion for Summary Judgment ("Plaintiff's S.J. SUF") ¶ 1 (citing Plaintiff's S.J. Mem., Ex. A ("Burbank Aff."[5]) ¶ 3). Curanderismo purchased Mile Square Lofts in 2003.  See id. ¶ 2 (citing Burbank Aff. ¶ 4).  The land records documentation for Mile Square Lofts states that the address is "404 Roosevelt Avenue and 9 Clay Street, Central Falls, RI."  Id. ¶ 3 (citing Plaintiff's S.J. Mem., Ex. F (land records documentation)).

At the inception of the mill renovation project, Curanderismo contacted Flagship to procure insurance for the project.  See id. ¶ 5 (citing Burbank Aff. ¶ 6).  Flagship is an

---

[4] As noted previously, see Discussion section IV. A. 2. at 23, Indian Harbor characterizes the "[s]ubject [p]roperty," Complaint ¶ 6, as encompassing both 9 Clay Street and 404 Roosevelt Avenue, see id. Assurance objects to this characterization.  See Defendant's Objection to Plaintiff's Statement of Undisputed Facts ("Defendant's SDF") at 1 ("Generally, Defendant objects to Plaintiff's characterization of the 'subject premises' as including both 9 Clay Street and 404 Roosevelt Avenue, as the subject loss clearly occurred at 404 Roosevelt Avenue.").  Accordingly, in this section, the Court does not adopt Plaintiff's description of the "subject premises" and, instead, uses the property's name, Mile Square Lofts.

[5] The Affidavit of Benjamin J. Burbank Vice President of Curanderismo, Inc., submitted as Ex. A to the Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's S.J. Mem."), is identical to the Affidavit of Benjamin J. Burbank Vice President of Curanderismo, Inc., submitted as Ex. A to the Memorandum in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opp. Mem.").  Thus, the Court does not distinguish between the two documents.

independent insurance agency which represents several insurance companies; its role in the process was to place insurance.  Id. ¶ 7 (citing Plaintiff's S.J. Mem., Ex. B (Kestenbaum Dep.[6]) at 20, 22).  Flagship maintained a Curanderismo account that included the policies of insurance related to the renovation proect that were purchased through Flagship and its predecessor agency.  Id. ¶ 6 (citing Kestenbaum Dep. at 7-8).  Flagship submitted an electronic request to Assurance that a builder's risk insurance policy be issued.  See id. ¶ 8 (citing Kestenbaum Dep. at 23, 32, 38).  Assurance issued a Builder's Risk Policy of insurance under policy number BR 47466553 to named insured Curanderismo for property location 404 Roosevelt Avenue, Central Falls, Rhode Island, with effective dates from July 29, 2003, through July 29, 2004.  See id. ¶ 14 (citing Plaintiff's S.J. Mem., Ex. C (certified copy of BR 47466553)).  This policy was subsequently renewed for the period of July 29, 2004, through July 29, 2005. See id.  Assurance thereafter issued a Builder's Risk Policy of insurance under policy number BR 62036217 to named insured Curanderismo for property location 9 Clay Street with effective dates from July 28, 2005, through July 28, 2006.  See id. ¶ 15 (citing Plaintiff's S.J. Mem., Ex. D (certified copy of policy number BR 62036217)).  Assurance collected a total premium of

---

[6] While the parties cite to different pages, Ex. 11 to Defendant's Opp. Mem. and Ex. B to Plaintiff's S.J. Mem. are excerpts from the Deposition of Bruce Kestenbaum ("Kestenbaum Dep.").

$10,888.00 with respect to Assurance Builder's Risk Policy number
BR 62036217. See id. ¶ 32 (citing Plaintiff's S.J. Mem., Ex. I
(Deposition of Barbara Rachele Holden ("Holden Dep.")) at 24).

Indian Harbor issued a commercial property policy of
insurance under policy number FCI 002 8194 to named insured Mile
Square Lofts, Curanderismo, Inc. as Trustee[7] with effective dates
from July 29, 2005, through July 29, 2006. Id. ¶ 17 (citing
Plaintiff's S.J. Mem., Ex. E (certified copy of policy number FCI
002 8194)). The Indian Harbor Policy was obtained by Flagship
through Insurance Innovators Agency of New England, Inc.
("Insurance Innovators"), which underwrites and binds policies of
insurance. Id. ¶ 23 (citing Plaintiff's S.J. Mem., Ex. G
(Deposition of Richard E. Martino ("Martino Dep."))[8] at 21-22).
Insurance Innovators gave Flagship access to other insurance
companies for which it was not an agent. See id. ¶ 24 (citing
Kestenbaum Dep. at 53-54). The Indian Harbor policy was procured
by the efforts of Flagship and then Insurance Innovators through
WKF&C of New England, which, in this instance, acted as an
outsourced underwriting agency for Indian Harbor. Id. ¶ 25
(citing Plaintiff's S.J. Mem., Ex. K ("Lemire Dep.") at 11.

---

[7] On November 28, 2005, the named insured on the Indian Harbor
Policy was changed from Curanderismo, Inc., to Mile Square Lofts,
Curanderismo, Inc. as Trustee. Plaintiff's LR CV 56 and Rule 12.1
Statement of Undisputed Facts in Support of Its Motion for Summary
Judgment ("Plaintiff's S.J. SUF") ¶ 22.

[8] Excerpts from the Deposition of Richard E. Martino ("Martino
Dep.") are also attached as Ex. 17 to Defendant's S.J. Mem.

On March 16, 2006, while a trench was being dug for the installation of a handicap ramp during the restoration project, an approximately sixty foot section of the masonry wall collapsed from the roofline to the ground.  See id. ¶ 18 (citing Complaint ¶ 10; Plaintiff's S.J. Mem., Ex. H ("Rourke Dep.") at 19-20).  The Loss included the collapse of the sixty foot section of masonry wall.  The damage extended to the interior of the building, damaging mechanical systems including heating, electricity, water, and sprinkler systems.  Id. ¶ 20 (citing Rourke Dep. at 38).  The Loss also caused damage to the ceilings and structural support of the building, including twisting of the building, uplifting of the flooring, distortion of the windows, and damage to the roof.  Id.

Following the Loss, Indian Harbor's insured took the position that time was of the essence with respect to the settlement of the claim.  Id. ¶ 29 (citing Rourke Dep. at 35). Indian Harbor made payment to its insured in the fully adjusted amount of the claim from the Loss pursuant to the terms and conditions of Indian Harbor's Commercial Property Policy.  See id. ¶ 38.[9]  However, Assurance disclaimed coverage for the Loss

_____

[9] The full text of ¶ 38 reads as follows:

As coverage for the subject loss was provided by the terms and conditions of the Indian Harbor Policy, and since Assurance had improperly disclaimed coverage rather than contributing a pro-rated share of the value of the claim, Indian Harbor made payment to its insured in the fully adjusted amount of the claim $755,649.16, less the $2,500.00 deductible.

and did not make any payment to its insured as a result of the
Loss.  Plaintiff's S.J. SUF ¶ 31 (citing Answer).  No notice of
cancellation was issued with respect to Assurance Policy number
BR 62036217.  See id. ¶ 33 (citing Holden Dep. at 24).

### 2.  Analysis

Indian Harbor makes essentially the same arguments in
support of Plaintiff's Motion for Summary Judgment as it did in
opposition to Defendant's Motion for Summary Judgment.
Specifically, Indian Harbor asserts that Assurance's contention-
that based on the "when coverage ends" clause in Assurance Policy
BR 62036217, its policy ceased to provide coverage by virtue of
the Indian Harbor policy-results in a "vastly inequitable
situation where a full premium o[f] over ten thousand dollars is
paid by Assurance's insured for twenty four hours of insurance
coverage and would unjustly enrich Assurance."  Plaintiff's S.J.
Mem. at 6-7.  Indian Harbor further argues that neither the
Assurance policy identified as BR 62036217 nor the Indian Harbor
policy FCI 002 8194 defines the term "'permanent property

_____

Plaintiff's S.J. SUF ¶ 38 (citation omitted).  Assurance disputes the
facts as phrased.  See Defendant's SDF ¶ 38.  According to Assurance,
"Assurance did not improperly disclaim coverage and was not
responsible to contribute a pro-rated share of the value of the
claim."  Id.  Assurance, however, does not dispute that Indian Harbor
paid its insured.  See Answer ¶ 11 (stating that Assurance lacks
sufficient knowledge to form a belief as to the facts stated in ¶ 11
of the Complaint); see also Complaint ¶ 11 ("Indian Harbor proceeded
to investigate and adjust the claimed loss and paid Mile Square Lofts
for the damage to its building pursuant to the terms and conditions of
the Commercial Property Policy issued to Mile Square Lofts.").

insurance' thereby creating an ambiguity in [Assurance policy BR 62036217]." Id. at 7.  Thus, in Indian Harbor's view, the Court should resolve the ambiguity in Assurance Builder's Risk Policy BR 62036217 "to comport with what a rational insured would understand; namely, that a policy that was fully paid for would provide coverage for the stated one-year effective period, not twenty-four hours."  Id.  Indian Harbor also contends that Curanderismo did not intend to purchase and pay premiums for separate insurance policies through Assurance and Indian Harbor; that it did not intend that 404 Roosevelt Avenue be insured through one insurer and 9 Clay Street through another; and that it did not intend to purchase permanent policy insurance, but, rather, "intended to cover the single building with a single construction-related policy of insurance."[10]  Plaintiff's S.J. Mem. at 7.  Finally, Indian Harbor argues that because both policies' "other insurance" clauses are mutually repugnant, "both insurers must pay their pro rata share of the loss measure."  Id. at 8.  Assurance responds that it "had no duty to contribute any amount to this loss, as its policy either terminated on the date the Indian Harbor Policy went into effect, or did not provide coverage to the loss location (404 Roosevelt Avenue) at all." Memorandum of Law in Support of Defendant's Objection to Plaintiff's Motion for Summary Judgment ("Defendant's Opp. Mem.")

---

[10] See n.3.

31

at 12.  Because the Court agrees with Assurance, it need not
reach Indian Harbor's final argument.

Viewing the policy in its entirety and affording its terms
their "plain, ordinary[,] and usual meaning," Am. Commerce Ins.
Co. v. Porto, 811 A.2d 1185, 1192 (R.I. 2002), the Court has
already found that the term "[w]hen permanent property insurance
applies ...," Plaintiff's S.J. SUF ¶ 16, is unambiguous, see
Discussion section IV. A. 2. at 15, and recommended that
Defendant's Motion for Summary Judgment be granted.  Therefore,
the Court need not address Plaintiff's original arguments in
support of its Motion for Summary Judgment.

In Plaintiff's Supplemental Memorandum in Support of Its
Motion for Summary Judgment ("Plaintiff's Supp. Mem."), Indian
Harbor contends that "[t]he declarations page of the Assurance
policy indicates that the policy provides coverage for
builder[']s risk coverage and existing buildings and structures."
Plaintiff's Supp. Mem. at 3; see also id. ("The declarations page
references the coverage for (1) a commercial structure (at 404
Roosevelt Avenue), and (2) the existing building or structure
located at 9 Clay Street.").  Assurance counters that "the
Declarations page clearly states that the insured property
location is '9 Clay Street, Central Falls, RI,' and separately
notes 404 Roosevelt Avenue as the insured's mailing address."
Defendant's Response to Plaintiff's Supplemental Memorandum in

32

Support of Motion for Summary Judgment ("Defendant's Response")
at 1 (bold and italics omitted).  Assurance further states that
"the attached Affidavit of Bruce Kestenbaum ["Kestenbaum Aff."],
President of Flagship Insurance Company, clarifies that the
reference to 'Including Existing Building or Structure' on the
Assurance Builder's Risk Policy Declarations Page means that the
policy covered the structure at 9 Clay Street, as well as the
renovations being done at and to the structure."  Id. at 2
(citing Kestenbaum Aff. ¶¶ 6-11).  Again, this dispute does not
affect the Court's determination of the instant Motions because,
even assuming that Assurance Builder's Risk Policy number BR
62036217 encompassed 404 Roosevelt Avenue as well as 9 Clay
Street, by its clear and unambiguous terms that policy terminated
when Indian Harbor Policy number FCI 002 8194 took effect.

Based on the foregoing, the Court finds that BR 62036217
provided no coverage for 404 Roosevelt Avenue on March 16, 2006,
the date of the Loss.  Accordingly, Plaintiff's Motion for
Summary Judgment should be denied.  I so recommend.

### Conclusion

I recommend that Defendant's Motion for Summary Judgement be
granted.  I further recommend that Plaintiff's Motion for Summary
Judgment be denied.

Any objections to this Report and Recommendation must be
specific and must be filed with the Clerk of Court within

33

fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b);

DRI LR Cv 72(d).  Failure to file specific objections in a timely

manner constitutes waiver of the right to review by the district

court and of the right to appeal the district court's decision.

See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir.

1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605

(1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
May 21, 2010